SHORR, J.
*260 This case involves a dispute over the rightful ownership of a property in Springfield, Oregon (the property), between Kathleen Krocker, as personal representative for the estate of Robert Casebeer (husband), and Carol Ann Casebeer, decedent's former wife (wife).[1] Pursuant to the couple's stipulated judgment of dissolution of marriage, husband had sole possession of the property in the 15 years between the dissolution of the marriage and his death. Upon husband's death, wife took possession of the property and claimed ownership thereof based on a quitclaim deed that purported to give her a right of survivorship. The personal representative sought a declaration from the trial court that husband had sole title to the property at the time of his death and that the estate was *720 therefore the rightful owner. The estate argued that the quitclaim deed was merely additional security on a promissory note required by the dissolution judgment, under which husband had agreed to pay wife a $ 40,000 equalizing payment for her share of the couple's equity in the property. The estate presented uncontested evidence that husband had satisfied the note before his death, which, the estate argued, cancelled the quitclaim deed by operation of law.
The trial court entered a judgment declaring that (1) husband had sole title to the property at the time of his death, (2) the property was an asset of husband's estate, and (3) wife had no legal interest in the property. Wife appeals and assigns error to those rulings. We conclude that the trial court did not err in declaring the parties' respective interests. The dissolution judgment required that husband provide the quitclaim deed as security for husband's promissory note to wife and, once the note was satisfied, wife's survivorship interest in the property was extinguished. Accordingly, we affirm.[2]
*261 I. FACTUAL AND PROCEDURAL BACKGROUND
We begin with a summary of the relevant facts, which are undisputed. Husband and wife divorced in 2001. At the time of their divorce, the couple owned the Springfield property. The terms of the divorce, including the distribution of marital property between the parties, were established by a stipulated dissolution judgment. The dissolution judgment, which was entered in June 2001, described the interrelated interests that both husband and wife-respondent and petitioner, respectively, in the language of the judgment-had in the Springfield property:
"Respondent is awarded as his sole and separate property the [Springfield property], free and clear of any claim on the part of Petitioner. * * *
"Respondent is in the process of refinancing said real estate. After the completion of the refinance, and in order to equalize the distribution of assets between the parties, Respondent shall execute a note and trust deed in Petitioner's favor in the sum of $ 40,000. * * * In addition, and after the recording of the trust deed, Respondent shall execute a Quitclaim Deed in favor of Petitioner and Respondent, said real property to be held not as tenants in common, but with right of survivorship."
The dissolution judgment then provided:
"The Petitioner shall be paid her $ 40,000 of equity in the marital home when the home is sold or refinanced, whichever may occur first. If the home is not sold or refinanced and the Petitioner outlives the Respondent, then she shall become sole owner of said property by right of survivorship. If the Respondent outlives the Petitioner then the Petitioner's interest in the real property shall extinguish."
Earlier that month, wife had conveyed the Springfield property to husband via a bargain and sale deed. The following month, July 2001, the parties signed the $ 40,000 promissory note and recorded the trust deed and the quitclaim deed. All three deeds-the bargain and sale deed, the trust deed, and the quitclaim deed-include language indicating that they were executed "pursuant to [the] stipulated judgment of dissolution of marriage."
*262 In December 2003, husband paid wife the $ 40,000 equalizing payment owed under the promissory note.[3] At husband's request, wife then reconveyed to husband her interest in the trust deed. Husband did not request *721 that wife reconvey the quitclaim deed and made no attempt to otherwise cancel or terminate the quitclaim deed. Similarly, wife did not offer to reconvey or waive her interest in the quitclaim deed or take steps to do so.
In April 2016, husband died, and wife took possession of the property based on the right of survivorship provided by the quitclaim deed. Husband's estate disputed her ownership and, in a petition for determination of ownership, sought from the trial court the declarations that are the bases for this appeal. In support of its petition, husband's estate argued that both the trust deed and the quitclaim deed required by the dissolution judgment were intended solely to be security for the $ 40,000 promissory note that husband provided to wife as part of the stipulated dissolution of their marriage. In short, husband's estate argued that the quitclaim deed was akin to a mortgage rather than a conveyance of a permanent interest in the property and that the deed expired by operation of law at the moment that the promissory note was satisfied. Wife argued in response that the quitclaim deed was a valid conveyance deed of the property itself that gave her a right of survivorship in the property regardless of whether husband had paid her the $ 40,000 so long as husband predeceased her.
The trial court agreed with the estate's understanding of the dissolution judgment and its effect on the quitclaim deed. With respect to the purpose of the quitclaim deed, the court made the following finding:
"The property was awarded to husband [by the dissolution judgment]. Husband was required to pay $ 40,000 to wife, and, as security, he was to provide wife the promissory *263 note, the trust deed, and also the quitclaim deed. [The quitclaim deed] was added security, it was not intended as an ownership interest, and it was only to be utilized, and end up an ownership interest, if certain criteria were met. One, that husband did not pay the $ 40,000, and two that husband predeceased his former wife."
Having determined that the quitclaim deed was intended only as security for the $ 40,000 promissory note and that husband had satisfied the note before his death, the court declared that wife "has no interest in the real property at issue," and, by contrast, that decedent "had sole title to the real property at issue at the time of his death." The court then declared that "the real property at issue is an asset of [husband's] estate."
II. ANALYSIS
The dispute between the estate and wife reduces to whether the stipulated judgment requires the quitclaim deed as, essentially, an additional trust deed or mortgage securing the $ 40,000 promissory note or a true conveyance deed granting wife a right of survivorship in the property conditioned only on husband predeceasing wife. The construction of a dissolution judgment "ultimately presents an issue for the court." Neal and Neal , 181 Or. App. 361, 365, 45 P.3d 1011 (2002). We "examine the text of the provision in the context of the dissolution judgment as a whole" to determine whether the trial court properly construed the disputed provisions. Id . at 366, 45 P.3d 1011.
A. Quitclaim deeds may be construed as security for a promissory note.
Before construing the dissolution judgment itself, we note that, under certain circumstances, a quitclaim deed that, on its face, appears to convey title to property can operate instead as a trust deed or mortgage-that is, as security on a promissory note or another form of debt. Unlike a conveyance, a trust deed, which is analogous to a mortgage, "conveys no legal or equitable interest in fee or in life * * * but merely creates a lien which constitutes security for [a] debt." West v. White , 92 Or. App. 401, 404, 758 P.2d 424 (1988). The general presumption is that "a deed absolute on its face *264 is 'what it purports to be unless and until proved otherwise by clear and convincing evidence.' "[4] Swenson v. Mills , 198 Or. App. 236, 241-42, 108 P.3d 77 (2005) (quoting *722 Fry v. D.H. Overmyer Co., Inc. , 269 Or. 281, 292, 525 P.2d 140 (1974) ). If "it appears that the parties' intent was to convey and receive the property as security for the fulfillment of an obligation, then the form of the instrument becomes immaterial and the true nature of the transaction may be shown by parol evidence." Id. at 242, 108 P.3d 77 (citing Umpqua Forest Ind. v. Neenah-Ore. Land Co. , 188 Or. 605, 614, 217 P.2d 219 (1950) ). There is " 'no conclusive test of universal application to determine whether a deed, absolute on its face, is a mortgage.' " French v. Boese , 50 Or. App. 369, 375, 623 P.2d 1070 (1981) (quoting Blue River Sawmills v. Gates , 225 Or. 439, 461, 358 P.2d 239 (1960) ). Rather, it is "determined based on a consideration of the whole transaction, by the 'mutual intention of the parties at the time the transaction was consummated.' " Swenson , 198 Or. App. at 242, 108 P.3d 77 (quoting Blue River Sawmills , 225 Or. at 446, 358 P.2d 239 ).
B. Husband and wife intended the quitclaim deed to secure the promissory note.
Turning to this case, we agree with the trial court's conclusion that husband and wife intended for the quitclaim deed to serve as additional security on the $ 40,000 promissory note rather than as a true conveyance deed. In other words, the parties did not intend for wife to have an unconditional right of survivorship in the property in the event that husband predeceased wife even after satisfying the note. Although the quitclaim deed does not contain language expressly providing that wife's right of survivorship exists only up until the point that husband satisfies the promissory note, that intention is nonetheless clear from the conditional language that the parties used when describing that right in the dissolution judgment.
As noted, the dissolution judgment provides that the right of survivorship under the quitclaim deed operates as follows:
*265 "If the home is not sold or refinanced [as a means of paying wife her $ 40,000 of equity in the property] and [wife] outlives [husband], then [wife] shall become sole owner of said property by right of survivorship."
(Emphases added.) In effect, the dissolution judgment clearly provides that wife's right of survivorship results in a conveyance of the property to wife only under the limited and specific circumstance that husband predeceases wife without having repaid her the $ 40,000 equalizing payment required by the dissolution judgment. Based on the conditional nature of that language, the quitclaim deed-which is expressly intended to reflect the intentions of the parties established by the dissolution judgment-contemplates that wife's survivorship interest in the property would end automatically upon satisfaction of the promissory note. By contrast, husband's right of survivorship is unconditional-if wife predeceased him, the dissolution judgment indicates that the parties intended for his possession of the property to continue in perpetuity rather than transferring by right of survivorship to wife's estate upon husband's death.
We are convinced that the parties' overriding concern was that wife must receive her equalizing share of the couple's combined equity in the property. The preferred method by which to ensure that wife received her share was for husband to pay wife $ 40,000. Husband's obligation to pay that sum was reflected by the promissory note, and the trust deed unambiguously served as security on that note. But the quitclaim deed was additional security on that note, notwithstanding that the deed appears absolute on its face. By the plain terms of the dissolution judgment, the intended purpose of the quitclaim deed was to ensure that wife was not left emptyhanded in the event that husband predeceased wife without having satisfied the promissory note.[5] The dissolution judgment evinces a mutual intention that wife should have a right of survivorship under only those specific circumstances. Indeed, if the parties had intended *266 to condition wife's right of survivorship only on wife surviving husband, *723 it is difficult to imagine why the parties would have used conditional language that makes wife's right of survivorship dependent on whether husband predeceased her without paying her the $ 40,000 equalizing payment for her share of the property.
In sum, the dissolution judgment evinces a clear intention that the right of survivorship under the quitclaim deed is not a conveyance but rather an additional layer of security on the $ 40,000 promissory note. The use of conditional "if-then" language in the dissolution judgment linking wife's right of survivorship to the specific circumstance of husband predeceasing wife without having satisfied the promissory note overrides the general presumption that the quitclaim deed is what it purports to be on its face. See Swenson , 198 Or. App. at 242, 108 P.3d 77.
C. Wife was obligated to reconvey the quitclaim deed upon satisfaction of the promissory note.
We turn to whether the trial court erred when it declared that husband and his estate had title to the property to the exclusion of any interest of wife. As explained, a trust deed, like the quitclaim deed here, is akin to a mortgage on the property rather than a conveyance. West , 92 Or. App. at 404, 758 P.2d 424. A mortgage "creates only a lien or encumbrance and does not abrogate the mortgagor's title to the property." Sam Paulsen Masonry v. Higley , 276 Or. 1071, 1075, 557 P.2d 676 (1976). Although a lienholder may have the opportunity to acquire title to the property to which the lien is connected if the underlying debt goes unpaid, the lienholder does not otherwise have title to the property. See Smith v. Mills , 207 Or. 546, 553, 296 P.2d 481 (1956) (rejecting the common-law approach wherein "a mortgagee held the fee to the real property subject to defeasance by the doing of some act, such as the payment of money in a prescribed time and manner"); West , 92 Or. App. at 404, 758 P.2d 424 ("[A mortgage] merely creates a lien which constitutes security for the debt.").
Under Oregon law, a mortgage or trust deed "is satisfied when the debt is discharged." Smith , 207 Or. at 553, 296 P.2d 481 ; accord. 55 Am. Jur. 2d Mortgages § 318 (2016) ("[P]ayment of secured debt extinguishes the lien of the mortgage or deed *267 of trust by itself and instantaneously."). That is because a mortgagee or beneficiary of a trust deed in Oregon does not hold title to the secured property; when the underlying debt is paid in full, the mortgagee or beneficiary does not retain an extant right to title because the mortgage never abrogated the mortgagor's right to title in the first place. In fact, under ORS 86.720, the beneficiary of a trust deed is obligated to request that the trustee reconvey the deed to the grantor upon performance of the obligation secured by the deed.[6]
In this case, wife argued to the trial court and on appeal that her survivorship interest in the property was not extinguished upon satisfaction of the promissory note because husband had failed to request a reconveyance of the quitclaim deed under ORS 86.720. Even assuming that ORS 86.720 applied here, wife misperceives the obligations imposed by that statute. In fact, the beneficiary of the trust deed-here, wife-is responsible for seeking reconveyance of the trust deed upon performance of the secured obligation. ORS 86.720(1). In short, the grantor is not obligated to request reconveyance under ORS 86.720.
The trial court's declarations correctly state the interests of the respective parties. The court declared the following:
*724 "1. That [wife] has no interest in the real property at issue;
"2. That [husband] had sole title to the real property at issue at the time of his death; and
"3. That the real property at issue is an asset of [husband's] estate."
*268 None of the trial court's declarations was in error. First, wife has no extant interest in the property, because she was merely a beneficiary of the promissory note secured by the trust deed and quitclaim deed. The quitclaim deed provided a right of survivorship as security on the note that expired when the note was paid. As discussed, the quitclaim deed functioned as a mortgage-not as an ownership in property-that was satisfied when the debt was paid.
Second, husband had sole title to the property at the time of his death. Under the bargain and sale deed from June 2001, wife conveyed the property to husband in its entirety, reserving no interest in the property for herself. Both the trust deed and quitclaim deed essentially operated only as a mortgage securing the promissory note for wife's equitable share in the property. Once husband had satisfied the note in 2003, wife reconveyed the trust deed to husband, and her sole remaining interest in title to the property-the conditional possibility of a right of survivorship-expired, leaving her with no interest in the property whatsoever upon husband's death in 2016.
Third, for those same reasons, the property passed to husband's estate upon his death. Husband had sole title to the property when he died, and wife's only potential interest had expired upon payment of the promissory note several years prior. As a matter of law, wife had no claim to title upon husband's death, because she conveyed the property to husband through the bargain and sale deed and lost her right of survivorship under the quitclaim deed upon payment of the promissory note.
Affirmed.

For the sake of simplicity, we use the terms "husband" and "wife," although we acknowledge that the parties dissolved their marriage prior to the dispute that gave rise to this case.

Wife also assigns error to the trial court's failure to dismiss the estate's action on statute of limitations grounds or based on the doctrine of laches. We reject those assignments without further written discussion.

The dissolution judgment provided that husband "is in the process of refinancing [the property]" and that wife would be paid "when the home is sold or refinanced, whichever may occur first." It is not clear from the record if husband successfully refinanced the property. However, we understand the reference to the property being "sold or refinanced" to describe how husband was expected to acquire the $ 40,000 owed under the dissolution judgment and not an independent, affirmative obligation. Because husband in fact paid wife $ 40,000, it is not relevant to our resolution of this case whether husband refinanced the property.

Clear and convincing evidence means evidence that establishes that "the truth of the asserted fact is highly probable." Hammond v. Hammond , 296 Or. App. 321, 328-29, 438 P.3d 408 (2019).

In fact, if husband predeceased wife without having paid the $ 40,000 note, wife would get the added benefit of receiving the entire property automatically upon husband's death. Under the terms of the trust deed, if husband did not pay wife on the $ 40,000 note, wife would only have a right to seek foreclosure to satisfy the $ 40,000 obligation.

ORS 86.720 provides, in relevant part:
"(1) Within 30 days after performance of the obligation secured by the trust deed, the beneficiary shall deliver a written request to the trustee to reconvey the estate of real property described in the trust deed to the grantor. Within 30 days after the beneficiary delivers the written request to reconvey to the trustee, the trustee shall reconvey the estate of real property described in the trust deed to the grantor. In the event the obligation is performed and the beneficiary refuses to request reconveyance or the trustee refuses to reconvey the property, the beneficiary or trustee so refusing shall be liable as provided by ORS 86.140 in the case of refusal to execute a discharge or satisfaction of a mortgage on real property."